EMILY A. JONES, APPELLANT, V. RUDOLPH KNOSP ET AL.,
APPELLEES.

FILED APRIL 20, 1912. No. 16,668.

1. **Judgment: RES JUDICATA: DEFENSE OF COVERTURE.** In an action against a married woman and another, as joint makers of a promissory note, which contains nothing from which it may be inferred that she is a married woman, that she signed the note as security for her husband, that she did or did not intend to thereby bind her separate estate, or that she did not directly receive the consideration therefor, if she fails to avail herself of the defense of coverture, and allows a judgment to be rendered against her as such joint maker, she is conclusively bound thereby, and is estopped to afterwards avail herself of the matters which constitute such a defense.

2. ———: ———. If she suffers her separate property to be sold on execution based on such judgment, she cannot thereafter maintain an action in equity to set aside a sheriff's deed to the purchaser for any reason that was available to her as a defense to the action in which the judgment was rendered.

3. ———: **LIEN.** A judgment of a justice of the peace, filed and indexed in the office of the clerk of the district court, is a lien upon after-acquired property, and such property is subject to the levy of an execution in satisfaction thereof.

4. ———: **RES JUDICATA: PROCESS: NAMES.** If process in an action is served on the person really intended to be sued, although a wrong name is given him in the writ and return, and he suffers a default, or, after appearing, omits to plead the misnomer in abatement, and judgment is taken against him, he is concluded thereby, and in all future litigations he may be connected with the suit or judgment by proper averments.

5. ———: ———: ———: ———. In such a case the defendant should appear and object by motion, in the nature of a plea in abatement, to being designated by another than his true name. Failing to do so, he will be concluded by the judgment, notwithstanding the misnomer.

APPEAL from the district fourt for Adams county: HARRY S. DUNGAN, JUDGE. *Affirmed*.

*M. A. Hartigan,* for appellant.

*J. A. Gardiner* and *John C. Stevens, contra.*

Barnes, J.

Action to set aside a sheriff's deed and quiet the title, in the plaintiff, to certain lots in the city of Hastings. The defendants had the judgment, and the plaintiff has appealed.

The evidence which was received by the trial court, over defendants' objections, shows the existence of the following facts: In the year 1901 plaintiff, a married woman, and her husband resided in the city of Hastings. The husband was engaged in the business of repairing wagons, and to carry on his trade he borrowed $100 of the defendant Norton, and gave his promissory note therefor, payable in one year from its date. Certain payments were made thereon, which reduced the indebtedness to $70. When the note became due the maker was unable to pay it, and after waiting some time Norton agreed to an extension of one year if Jones would give him a new note signed by himself and his wife. The note was executed by the plaintiff and her husband. It was not paid when it became due, and suit was brought thereon in the justice court of Adams county against the joint makers, the plaintiff being named or described in that suit as "Emma A. Jones." Personal service of summons was made on the plaintiff, and service upon her codefendant was made by leaving a copy of the summons at his usual place of residence. Both of the defendants defaulted, and a judgment was rendered against them in that action for the sum of $77.93. Shortly after the judgment was obtained it was transcripted to the district court for Adams county, and was duly filed and indexed by the clerk of that court. At that time, and for nearly a year thereafter, the plaintiff had no separate estate and no property in her own right of any kind whatsoever. Within a year after the transcript was filed the plaintiff inherited some property from her father's estate, and with it purchased the lots in question, which were conveyed to her by a deed of general warranty, in which she was described by the name of

"Emily Amanda Jones." On the 8th day of December, 1908, an execution was issued by the clerk of the district court upon the transcripted judgment and delivered to the sheriff of Adams county. It was levied upon the lots in question; they were appraised, advertised and sold, and were purchased by the defendant Knosp. In due time the sale was confirmed, and by the direction of the district court the sheriff executed a deed of the premises to the purchaser. It appears that when confirmation was applied for the mistake or discrepancy of the plaintiff's name was ascertained, and when the order of confirmation was made the court endeavored to correct this discrepancy without the service of notice of any kind upon the plaintiff. After the introduction of the evidence there was a general finding in favor of the defendants, and upon that finding this action was dismissed.

It is contended by appellant that, notwithstanding the undisputed facts above recited, the defense of coverture, which she might have successfully made in the suit upon the note, is still available to her in this collateral action; that the transcripted judgment never became a lien upon her after-acquired property, and that such property was not subject to levy and sale thereunder.

It is apparent that appellant's first contention entirely ignores the binding force and conclusiveness of the transcripted judgment which was rendered against her in the action on her promissory note. It must be observed that it was not not shown that there was anything contained in that instrument which indicated that she was a married woman, that she signed it as security for the payment of her husband's debt, that she did or did not intend to bind her separate estate, that she was not the principal maker thereof, or that she did not directly receive the consideration therefor. If any of the facts on which she bases her present contention existed, she should have appeared in that action and made her defense known to the court. If she had appeared and defended, the matters of which she now seeks to avail herself would have been

a complete defense, but having failed to thus assert her rights she is fully concluded by the judgment of that court.  The rule is well settled that the doctrine of *res judicata* "applies not only to the points upon which the court was required by the parties to pronounce a judgment, but to every point which properly belonged to the subject matter of litigation, and which the parties, exercising reasonable diligence, might have brought forward at that time." *First Nat. Bank v. Gibson,* 74 Neb. 232. "A judgment on the merits in the trial of a civil action constitutes an effective bar and estoppel in a subsequent action upon the same claim or demand, not only as to every matter offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which might have been offered for such purpose." *Lowe v. Prospect Hill Cemetery Ass'n,* 75 Neb. 85.  It is also well settled that a judgment by default is just as conclusive between the parties, upon all matters necessary to support the judgment, as one rendered after answer and and contest.  2 Black, Judgments (2d ed.) sec. 508; *Last Chance Mining Co. v. Tyler Mining Co.,* 157 U. S. 683.

It was contended on the hearing that the plaintiff was not served with summons in the action upon the note, and the record discloses that she testified that no summons was ever served upon her.  We find, however, that her testimony was not only disputed by the record itself, but the officer who served the summons testified in this case that he was acquainted with the plaintiff, and that he actually delivered to her a copy of the summons at the time and in the manner recited in the record.  It follows that this contention must fail; and, while the situation is a regrettable one, it seems to have been caused either by the neglect or ignorance of the plaintiff herself, from which we are unable to give her any relief.

It is further contended that the transcripted judgment never became a lien upon the lots in question because they were acquired by the plaintiff after its rendition, and were not subject to levy and sale thereunder.  Section

477 of the code provides: "The lands and tenements of the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof, from the first day of the term at which judgment is rendered. * * * All other lands, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution." It was held in *Colt v. Du Bois*, 7 Neb. 396, that the lien of a judgment attaches to land subsequently acquired. Section 561 of the code provides for filing transcripts of judgments rendered by justices of the peace in the office of the clerk of the district court. And section 562 provides: "Such judgment, if the transcript shall be filed in term time, shall have a lien on the real estate of the judgment debtor, from the day of the filing; if filed in vacation, as against the judgment debtor said judgment shall have a lien from the day of the filing, and as against subsequent judgment creditors from the first day of the next succeeding term, in the same manner and to the same extent as if the judgment had been rendered in the district court." Therefore, it cannot be said that the transcripted judgment was not a lien upon the lots in question, for in any event, upon levy of the execution, it became a lien thereon, and the sale thereunder regularly and lawfully made and confirmed by the district court vested the title to plaintiff's lots in the purchaser.

It was also contended that, by reason of the fact that plaintiff was designated in the transcripted judgment as "Emma A. Jones" instead of "Emily Amanda Jones," the purchaser at the execution sale obtained no title as against her to the lots in question. In 1 Black, Judgments (2d ed.) sec. 213, it is said: "It is a well established rule that if process in an action is served upon the person really intended to be sued, although a wrong name is given him in the writ and return, and he suffers a default, or, after appearing, omits to plead the misnomer in abatement, and judgment is taken against him, he is concluded thereby, and in all future litigation he may be

connected with the suit or judgment by proper averments."
In *Kuhn v. Kilmer,* 16 Neb. 699, it was said: "Where a
judgment is rendered and execution issued against Rosina
Coons, it is not sufficient reason for setting aside a sale
of real estate made on such execution that the right name
of the defendant is shown to be Rosina Kuhn." In *Davis
v. Jennings,* 78 Neb. 462, a case of misnomer, it was held,
where the right defendant was actually served with a
summons, that the misnomer was no ground for quashing
the writ or service; that in such a case the defendant
should appear and object by motion in the nature of a
plea in abatement to being designated by any other than
his true name. We are therefore of opinion that defend-
ants' contention upon this point is not well founded.

Finally, we may say that we have not overlooked *Grand
Island Banking Co. v. Wright,* 53 Neb. 574; *Kocher v.
Cornell,* 59 Neb. 315, and other cases of a like nature.
But it must be observed that in those cases the defense
of coverture was interposed in due time and before final
judgment.

From the foregoing it seems clear that the judgment
of the district court was right, and is therefore

AFFIRMED.